# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

| | |
|---|---|
| **BILLY L. HARVEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:05-0478 |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States Magistrate Judge by Standing Order to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 3.) Presently pending before the Court are the parties' Cross-Motions for Judgment on the Pleadings. (Doc. Nos. 15, 16.)

The Plaintiff, Billy L. Harvey (hereinafter referred to as "Claimant"), filed an application for DIB on January 14, 2003 (protective filing date), alleging disability as of August 23, 2002, due to "back pain that radiated into his legs." (Tr. at 27, 87-90, 103.) The claim was denied initially and upon reconsideration. (Tr. at 64-65, 70-72.) On February 13, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 73.) A hearing was held on July 23, 2004, before the Honorable Theodore Burock. (Tr. at 370-95.) On November 24, 2004, the ALJ issued a decision denying Claimant's claim for benefits. (Tr. at 27-36.) The ALJ's decision became the final

decision of the Commissioner on June 8, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 3-8.) On June 13, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and

prior work experience. 20 C.F.R. § 404.1520(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 28.) Under the second inquiry, the ALJ found that Claimant suffered from a severe back impairment. (Tr. at 31, 35.) At the third inquiry, the ALJ concluded that Claimant's impairment did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 31, 35.) The ALJ then found that Claimant had a residual functional capacity to perform light exertional work, limited to routine, repetitive tasks with only occasional balancing, stooping, kneeling, crouching or crawling. (Tr. at 33, 35.) Additionally, Claimant cannot climb or be exposed to extreme cold, moderate vibrations, or hazards. (Tr. at 33, 35.) As a result, Claimant could not return to his past relevant work. (Tr. at 33-35.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ nonetheless concluded that Claimant could perform jobs such as a self service cashier, a door keeper/gate guard, and a laundry worker at the light exertional level, and jobs such as a dispatcher, an inspector, and an assembler, at the sedentary exertional level, all of which existed in significant numbers in the regional and national economies. (Tr. at 35-36.) On this basis, benefits were denied. (Tr. at 35-36.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals that the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on September 12, 1959, and was 44 years old at the time of the administrative hearing. (Tr. at 33, 88, 374.) Claimant has a high school education. (Tr. at 27, 109, 376.) In the past, he worked as a store clerk, an exterminator, and a coal sampler. (Tr. at 27, 104, 120-23, 387-88.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant argues that this case should be remanded so that an ALJ can consider evidence that was presented for the first time to the Appeals Council and rejected without explanation. Claimant

4

alleges that the additional evidence was new and material, but does not demonstrate how, other than to summarize the results of the x-ray, MRI, myelogram, and CT studies and the standard that treating physician's opinions should not be treated lightly. (Pl.'s Br. at 11.) The Commissioner argues that the additional evidence is neither new, material, nor relates to the period at issue, that the ALJ's decision is supported by substantial evidence, and that Claimant's argument is without merit.

Appeals Council Evidence

Claimant argues that this case should be remanded because the Appeals Council failed to explain its reasons for rejecting the additional evidence. The record contains the following evidence which Claimant submitted to the Appeals Council during review of his case: (1) Report of November 5, 2004, MRI Scan of lumbar spine (Tr. at 274-75.); (2) Report of November 10, 2004, EMG/NCS Study conducted by Joe O. Othman, M.D., A.C.P. (Tr. at 276-77.); (3) Letter from Melissa McMillien, D.C., Chipley Chiropractic, PLLC, dated January 11, 2005 (Tr. at 281-82); (4) Claimant's Report dated January 13, 2005 (Tr. at 283-87.); (5) Physical Residual Functional Capacity Assessment prepared by R.M. Bellam, M.D., on January 19, 2005 (Tr. at 288-91.); (6) Physical Therapy records from HealthSouth from January 16, 2003, through March 18, 2003 (Tr. at 292-357.); (7) Results of lumbar x-ray, myelogram, and CT myelogram, conducted on March 14, 2005 (Tr. at 363-66.); and (8) Psychiatric treatment notes from Ahmed D. Faheem, M.D., dated March 29, 2005. (Tr. at 369.)

The record shows that this evidence was submitted to the Appeals Council and was made a part of the record that is currently before the Court. (Tr. at 3-8.) The Appeals Council's June 8, 2005, decision concluded that there was no basis for granting Claimant's request for review of the ALJ's decision. (Tr. at 4-5.) In the Appeals Council decision, the Appeals Officer stated as follows:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.
>
> We found that this information does not provide a basis for changing the Administrate Law Judge's decision.

(Tr. at 5.) The attached Order of the Appeals Council reflects the evidence noted above as evidence received by the Appeals Council and made a part of the record. (Tr. at 7-8.) In deciding whether to grant review, the Appeals Council "must consider evidence submitted with the request for review . . . 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" Wilkins v. Secretary, 953 F.2d 93, 95-96 (4th Cir. 1991)(*en banc*)(citations omitted). Evidence is "new" if it is not duplicative or cumulative. See id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.

While the it does not appear that the Fourth Circuit has specifically addressed the question whether the Appeals Council is required to make findings on evidence submitted after the ALJ's decision, this Court found in Short v. Barnhart, Civil Action No. 1:04-0878 (S.D. W.Va. Oct. 4, 2005)(Faber, C.J.), that the Appeals Council is not required to provide an explanation for its consideration of additional evidence. Rather, the Court, in reviewing the ALJ's decision "in the light of evidence which the ALJ never considered, and thus never evaluated or explained," must "determine whether this additional evidence creates a 'conflict,' is 'contradictory,' or 'calls into doubt, any decision grounded in the proper medical reports.'" Id. (*citing* Camper v. Barnhart, 2005 WL 1995446, *5 (W.D.Va. Aug. 16, 2005)). Considering evidence which Claimant submitted to the Appeals Council and the Appeals Council included in the record, the Fourth Circuit concluded in Wilkins, 953 F.2d at 96, that courts reviewing decisions of the Social Security Administration must

6

consider "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Thus, reviewing Courts must consider new evidence which the claimant submits while the decision of the Appeals Council is pending even when the Appeals Council denies the claimant's request for review. See also Adkins v. Barnhart, 2003 WL 21105103, * 5 (S.D.W.Va. May 5, 2003)(Stanley, M.J.).

In the instant case, the additional evidence was considered by the Appeals Council and made a part of the record. The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered *unless* the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(b) (2004), Hawker v. Barnhart, 235 F.Supp.2d 445, 445-46 (D. Md. 2002). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about [his] rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D.W.Va. May 5, 2003). Thus, in the instant case, the additional evidence was considered by the Appeals Council and made a part of the record, and must have been deemed new and material and related to the period on or before the date of the ALJ's decision.

   *1.     Report of November 5, 2004, MRI Scan of lumbar spine.*

Claimant submitted to the Appeals Council additional records from an MRI scan of his lumbar spine conducted on November 5, 2004. (Tr. at 274-75.) The MRI revealed that Claimant has a broad-based mixed spondylotic protrusion at L5-S1, a right foraminal protrusion that effaces the right L5-S1 nerve root, and a desiccated disc. (Tr. at 274-75.) The Commissioner argues that the MRI study is neither new nor material because it is cumulative of the lumbar x-ray and MRI studies

conducted in August and October, 2002, evidencing degenerative disc disease, herniation, and nerve root impingement. (Def.'s Br. at 11.) The Commissioner also argues that there is no evidence of a decrease in Claimant's functional ability related to the November, 2004, MRI results. (Def.'s Br. at 11.)

The undersigned agrees with the Commissioner and finds Claimant's argument on this point unavailing. The November 2004 MRI study reveals spondylotic protrusion at L5-S1, dessicated disc centrally, and right foraminal disc protrusion effacing the L5-S1 nerve root. (Tr. at 274-74.) Similarly, the October, 2002, MRI study considered by the ALJ revealed significant degenerative disc disease, herniations, and foraminal narrowing with nerve root sheath impingement. (Tr. at 243-44.) The most recent MRI therefore, does not evidence any significant change in Claimant's back condition and does not conflict, contradict, or call into doubt the ALJ's decision based on the earlier MRI study.

> 2. *Report of November 10, 2004, EMG/NCS Study conducted by Joe O. Othman, M.D., A.C.P.*

Claimant submitted to the Appeals Council additional records from an EMG/NCS study conducted by Dr. Othman on November 10, 2004, evidencing normal studies of his lower extremities and lumbar paraspinals. (Tr. at 276-77.) As the Commissioner notes, the studies reflect an improvement in Claimant's condition. Accordingly, the undersigned finds that this evidence does not conflict, contradict, or call into doubt the ALJ's decision based on prior medical records.

> 3. *Letter from Melissa McMillien, D.C., Chipley Chiropractic, PLLC, dated January 11, 2005.*

Ms. McMillien's letter dated January 11, 2005, summarizes Claimant's treatment at Chipley Chiropractic, PLLC, from August 29, 2002, through September 9, 2003. (Tr. at 281-82.) In her letter,

Ms. McMillien opines that although Claimant put forth his best effort to follow the treatment plan, "[i]t is felt that at the end of his treatment that his prognosis was poor to be able to return to work." (Tr. at 282.) The Commissioner argues that this letter is neither new nor material because the contemporaneous treatment notes were already part of the record considered by the ALJ. (Def.'s Br. at 12.) The Commissioner further argues that the letter suggests that Claimant is unable to return to the work contemplated by the work-hardening program aimed at returning him to his prior lifting level of one hundred pounds. (Id.) Because the ALJ considered the actual treatment notes from Chipley Chiropractic for the same time period covered by Ms. McMillien's letter, the undersigned finds that the evidence is cumulative and does not conflict, contradict, or call into doubt the ALJ's decision. The undersigned notes that the Regulations do not recognize chiropractors as acceptable medical sources and provide that opinions as to the ultimate issue of disability are reserved to the Commissioner. See 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), (e)(2)-(3) (2004).

    *4.*    *Claimant's Report dated January 13, 2005.*

On January 13, 2005, after the ALJ's decision, Claimant prepared a report in which he describes and explains his aches and pains. (Tr. at 283-87.) The Commissioner argues that the report is a reiteration of Claimant's complaints prepared after the period at issue and therefore, is neither new, material, nor related to the period at issue. (Def.'s Br. at 12.) In his opinion, the ALJ considered Claimant's subjective complaints and found them to be inconsistent with the objective medical evidence, and therefore, not entirely credible. (Tr. at 33.) Specifically, the ALJ found that his symptoms were inconsistent with the medical evidence, that his conservative treatment does not support his complaints of constant aching pain, that the record does not support the medication side-effects alleged, and that the evidence does not support Claimant's alleged restricted activity level

9

based on his minimized reports of daily activities. (Tr. at 33.) Accordingly, the undersigned finds that Claimant's self report is cumulative of the evidence considered and discredited by the ALJ, and therefore, does not contradict, conflict, or call into doubt the ALJ's decision.

> 5. *Physical Residual Functional Capacity Assessment prepared by R.M. Bellam, M.D., on January 19, 2005.*

The Physical Residual Functional Capacity Assessment prepared by Dr. Bellam on January 19, 2005, limits Claimant to performing work at the sedentary level of exertion, prohibits any climbing, stooping, crouching, or crawling, and allows only occasional balancing and kneeling. (Tr. at 289.) Dr. Bellam opines that Claimant is able to stand or walk for a maximum of one hour and is able to sit for a maximum of two hours, without resting and stretching. (Tr. at 289.) He further opines that Claimant's ability to push/pull is affected by his impairment and that he is subject to environmental restrictions including heights, moving machinery, temperature extremes, humidity, and vibration. (Tr. at 290.) The Commissioner argues that Dr. Bellam's opinion is contradictory to his treatment records and the opinions of Dr. Gobunsuy, Dr. Armbrust, and Dr. Lambert, as well as the most recent EMG/NCS study. (Def.'s Br. at 13.)

The undersigned finds that the RFC assessment is new because it was not prepared until after the ALJ's decision. However, the undersigned finds that the assessment is not material because it is not supported by Dr. Bellam's treatment notes or the opinions of Drs. Gobunsuy, Armbrust, and Lambert. The record before the ALJ contained Dr. Bellam's treatment notes from September 11, 2003, through October 9, 2003. (Tr. at 247-51.) Dr. Bellam noted the results of Claimant's MRI scan and that physical therapy was not helping his complaints of pain. (Tr. at 247-49.) The only limitation that can be inferred from his notes, however, is Claimant's inability to bend forward, which was measured at 60 degrees. (Tr. at 247.) Nevertheless, in his RFC assessment, Dr. Bellam significantly

10

limited Claimant's ability to walk, stand, climb, stoop, crouch, crawl, kneel, push, pull, and balance. (Tr. at 189-90.) These limitations are not supported by his treatment notes. Furthermore, the substantial evidence of record, primarily consisting of the records and opinions from Drs. Gobunsuy, Armbrust, and Landis, and the objective medical testing, does not support Dr. Bellam's significant limitations. Accordingly, the undersigned finds that Dr. Bellam's RFC assessment is not material, and therefore, does not contradict, conflict, or call into doubt the ALJ's decision.

> *6.    Physical Therapy records from HealthSouth from January 16, 2003, through March 18, 2003.*

Claimant's physical therapy records from HealthSouth indicate that he received treatment through a work conditioning program from November 26, 2002, through March 18, 2003, and include progress reports, an initial functional capacity evaluation conducted on January 16, 2003, and a discharge report. (Tr. at 292-357.) As the Commissioner notes, the January 16, 2003, functional capacity evaluation was a part of the administrative record and was considered by the ALJ. (Tr. at 32, 252-58.) This evaluation, therefore, is neither new, material, nor calls into doubt or contradicts the ALJ's decision.  The notes and reports indicate that throughout treatment, Claimant continually experienced low back and left lower extremity pain with occasional improvement, and that he did not meet his program goals involving lifting. (Tr. at 300, 302, 346.) Even though Claimant gradually exhibited improved pelvic mobility, at the conclusion of the program it was not recommended that he advance to the work hardening program due to the levels of pelvic mobility and pain in his lower back and left leg. (Tr. at 294.)

Although the actual treatment records were not part of the administrative record, to the extent that the treatment was concluded by March 18, 2003, and the results considered by Drs. Gobunsuy (Tr. at 145-55.), Armbrust (Tr. at 172, 260.), and Landis (Tr. at 186, 263.) in their evaluations, the

undersigned finds that the evidence is cumulative and not material. Additionally, the undersigned finds that the evidence does not contradict the ALJ's RFC assessment. As discussed above, the ALJ found that Claimant retained the residual functional capacity to perform work at the light exertional level limited to occasional balancing, stooping, kneeling, crouching, or crawling, with no climbing. (Tr. at 33, 35.) The Commissioner argues, and the undersigned agrees, that nothing in the physical therapy records conflicts, contradicts, or calls into doubt the ALJ's RFC assessment. Although the ALJ noted in his opinion that Claimant did not undergo any physical therapy (Tr. at 32.), the undersigned finds that the treatment was essentially one month in duration, and therefore, it is not likely that this new evidence would change the ALJ's decision. Additionally, as with a chiropractor, the Regulations do not recognize physical therapists as an acceptable medical source. See 20 C.F.R. § 404.1513(a), 404.1527(a)(2), (e)(2)-(3) (2004) (2004).

> 7. *Results of lumbar x-ray, myelogram, and CT myelogram, conducted on March 14, 2005.*

On March 4, 2005, Claimant underwent a lumbar x-ray, myelogram, and CT lumbar myelogram. (Tr. at 363-66.) The Commissioner first argues that because the studies were conducted approximately four months after the ALJ's decision, they are not relevant to the time period in question. (Def.'s Br. at 14.) Second, the Commissioner avers that the studies do not demonstrate any significant changes in Claimant's condition, and therefore, are neither new nor material. (Def.'s Br. at 14-15.)

The March 2005, studies reveal spondylosis, most pronounced at L5-S1; a ventral extradural defect at L5-S1; spondylotic spurs and disc protrusion at L5-S1, with no canal or neural foraminal narrowing; and arthropathy at multiple levels. (Tr. at 363-66.) When compared with prior x-rays and MRI scans conducted on August 26, 2002 (Tr. at 245-46.), October 2, 2002 (Tr. at 243-44.), and

November 5, 2004 (Tr. at 274-75.), the absence of any narrowing of the spinal canal suggests that Claimant's condition is not as severe as originally thought. Nevertheless, the most recent studies are cumulative of the prior studies which revealed significant degenerative disc disease at L5-S1 with herniation and nerve root sheath impingment. (Tr. at 243-44, 363-66.) Accordingly, the undersigned finds that the March 2005, studies reveal no significant change in Claimant's condition, are cumulative of prior studies, and therefore, do not contradict, conflict, or call into doubt the ALJ's decision.

       *8.*      *Psychiatric treatment notes from Ahmed D. Faheem, M.D., dated March 29, 2005.*

Finally, Claimant submitted treatment notes from Dr. Faheem, dated March 29, 2005, evidencing a single treatment session nearly four months after the ALJ's decision. (Tr. at 369.) Dr. Faheem's notes indicate that Claimant complained of being depressed with feelings of hopelessness and helplessness, tiredness, and frustration. (Tr. at 369.) Claimant further complained that he experienced significant problems sleeping at night. (Id.) On exam, Dr. Faheem observed that Claimant was alert, well-oriented, and cooperative, with no hallucinations, delusions, or thoughts of suicide or homicide. (Id.) Dr. Faheem diagnosed Claimant as having Depressive Disorder NOS and prescribed Lexapro and Trazodone. (Id.) The Commissioner argues that to the extent the treatment notes reflect any change in Claimant's mental condition, the changes could have occurred after the end of the period at issue. (Def.'s Br. at 15.) The Commissioner further argues that Drs. Gobunsuy, Armbrust, and Landis noted that Claimant had a normal mental status on exam and was alert and oriented, and that the ALJ accommodated Claimant's depression in his RFC assessment by limiting Claimant to performing routine, repetitive tasks. (Id.) Thus, the Commissioner avers that Dr. Faheem's treatment notes do not suggest any functional limitation that

was not accommodated by the ALJ in his RFC assessment. (Def.'s Br. at 16.)

On physical exam, Drs. Gobunsuy, Armbrust, and Landis reported that Claimant was alert and oriented and that his mental status appeared normal. (Tr. at 155, 172, 186.) Although the medical record before the ALJ did not indicate that Claimant had a "mental" condition, Claimant testified at the administrative hearing that he was "a little bit forgetful" and got "depressed a lot." Consequently, the ALJ, noting that Claimant possessed a high school education and complained of significant depression despite having sought no treatment for it, limited him to performing only routine, repetitive tasks. (Tr. at 27, 31, 33.) The undersigned finds that while Dr. Faheem's medical records may be new and material, they solely diagnose Claimant with suffering from depression months after the ALJ's decision and do not limit his functional abilities. Accordingly, the undersigned finds that the treatment records do not relate to the period at issue, and therefore, do not contradict, conflict, or call into doubt the ALJ's decision.

In consideration of the foregoing, the undersigned finds that Claimant has failed to demonstrate that the additional evidence submitted to the Appeals Council creates a conflict, is contradictory, or calls into doubt, any decision by the ALJ based upon the record before him. Accordingly, the undersigned further finds that the ALJ's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **GRANT** the Defendant's Motion for Judgment on the Pleadings, **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: July 25, 2006.

R. Clarke VanDervort
United States Magistrate Judge

15